ESTATE OF NETTIE S. MILLER, IRWIN MILLER AND CLEMENTINE M. TANGEMAN, COEXECUTORS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

ELSIE I. SWEENEY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 1152-63, 1153-63. Filed March 12, 1965.

*David M. Cook,* for the petitioners.
*William O. Allen,* for the respondent.

MULRONEY, *Judge:* Respondent determined deficiencies in income tax of petitioners as follows:

| Docket No. | Year | Deficiency |
|---|---|---|
| 1152-63 | 1946 | $5,421.98 |
|  | 1947 | 306.98 |
| 1153-63 | 1946 | 4,792.48 |
|  | 1947 | 306.97 |

Because of our disposition the only issue that is reached is whether Investors Trust Ltd. was a foreign personal holding company under section 331, I.R.C. 1939,[1] during the years 1946 and 1947.

FINDINGS OF FACT

All of the facts have been stipulated and they are found accordingly. In the years 1946 and 1947 Nettie S. Miller and Elsie I. Sweeney,

---

[1] All section references are to the Internal Revenue Code of 1939, as amended, unless otherwise noted.

who were citizens of the United States, filed their income tax returns with the collector of internal revenue for the district of Indiana, at Indianapolis, Ind. During said years they each owned 951 shares of Investors Trust Ltd., which they had acquired February 8, 1946.

Investors Trust Ltd. is a foreign corporation organized and existing (since 1935) under the laws of Canada. It is stipulated that during each of the calendar years 1946 and 1947, at least 60 percent of its gross income was foreign personal holding company income within the meaning of section 331 (a) (1) of the Internal Revenue Code of 1939.

During the years 1946 and 1947 the outstanding registered stock of Investors Trust Ltd. was owned as follows:

REGISTERED STOCK OWNED BY CITIZENS AND RESIDENTS OF THE UNITED STATES

| Shareholder | Shares owned | |
|---|---|---|
| | 1946 | 1947 |
| Margaret F. Nye, an individual | 1,658 | 1,658 |
| Elsie I. Sweeney, an individual | 951 | 951 |
| Nettie S. Miller, an individual | 951 | 951 |
| Morton D. Joyce, an individual | 1,000 | |
| Wm. B. Joyce & Sons, Inc., a U.S. corporation | 1,000 | 2,000 |
| Robert R. Young, an individual | 6,160 | 6,160 |
| Total shares owned by citizens and residents of the United States | 11,720 | 11,720 |
| Registered stock owned by citizens or residents of other countries | 3,400 | 3,400 |
| Total registered shares outstanding | 15,120 | 15,120 |

In addition to the 15,120 registered shares issued and outstanding, Investors Trust Ltd. had issued bearer warrants in 1935 for additional shares. Under the terms of the warrants, the corporation was required, upon surrender of the warrants by their bearer, to issue 19,800 shares of registered common stock to the bearer. The warrants remained outstanding from 1935 to 1954. In 1954 the warrants were converted into 19,800 shares of registered common stock of the corporation.

The parties stipulate that for the purposes of these cases "it may be assumed that during the years 1946 and 1947 the warrants for 19,800 shares were owned one-half by Eva Webb and one-half by Florence Eaton-Kaye." These persons were sisters and citizens of Canada, where Eva resided. Florence resided in Great Britain in 1946 and 1947. They were also sisters of Cyrus S. Eaton who, at all times material here, was a resident and citizen of the United States.

The so-called bearer warrant instrument is in form a stock certificate. It is entitled "Share Warrant" and it certifies that the bearer is entitled to a stated number of "fully paid up shares, without nominal or par value, in the capital of INVESTORS TRUST LTD. subject to the provisions of The Nova Scotia Companies Act, the Memorandum and

Articles of Association of the Company and to the conditions endorsed hereon." The printed conditions on the back of the certificate provide, in part:

2. The bearer of this Warrant shall, subject to the conditions for the time being in force, whether made before or after the issue of such Warrant, be deemed to be a shareholder within the meaning of The Nova Scotia Companies Act.

3. All Share Warrants shall be transferable by delivery and the Company shall not be bound or compelled, in any way to recognize, even without having notice thereof, any other right in respect of a Share Warrant than an absolute right thereto in the bearer hereof for the time being.

*       *       *       *       *       *       *

8. Upon any dividend being declared and becoming payable in respect of the shares specified in any share warrant, the person, presenting at the office of the Company the Bearer Share Warrant or Warrants including the shares in respect of which the dividend has been declared, shall be entitled to receive such dividend as may then be payable in respect of such shares and there shall be stamped upon the said share warrants a statement showing that the dividend, in respect of the shares embraced therein, has been paid.

The printed conditions on the back of the warrant go on to provide that the bearer of the share warrant can join in the calling of a shareholders meeting and vote in a shareholders meeting if he deposits his warrant at a place designated by the directors 3 days before the date of the meeting. He can remain a share warrant holder or he can at any time surrender his warrant and receive registered shares with respect to the shares specified in the warrant.

Nettie S. Miller and Elsie I. Sweeney did not include any amounts of undistributed supplement P net income from Investors Trust Ltd. for either of the years 1946 or 1947. Respondent, in his notices of deficiency directed to the estate of Nettie S. Miller, deceased, Irwin Miller and Clementine M. Tangeman, coexecutors, and Elsie I. Sweeney, determined that Investors Trust Ltd. was a foreign personal holding company and increased the income of Nettie S. Miller and Elsie I. Sweeney for each of the 2 years by their pro rata share of the undistributed supplement P net income of the corporation attributable to the 951 shares each held. The following is respondent's explanation of this adjustment in docket No. 1152-63:

It has been determined that Investors Trust Limited was a foreign personal holding company under section 331 of the Internal Revenue Code of 1939 for the taxable year ended December 31, 1946; that Investors Trust Limited had undistributed Supplement P net income for the taxable year ended December 31, 1946, in the amount of $242,173.72; and that the pro rata share of the undistributed Supplement P net income of Investors Trust Limited attributable to the 951 shares held by you in 1946 and includible in your gross income under section 337(b) of the Internal Revenue Code of 1939 is $6,594.39. * * *

Similar explanations are contained in the other notice here involved. It is stipulated that the corporation had undistributed supplement

P net income for the calendar years 1946 and 1947 in the amounts of $242,173.72 and $13,039.88, respectively, and that the pro rata share of such undistributed supplement P net income attributable to 951 shares of its stock for 1946 and 1947 was $6,594.39 and $335.08, respectively.

OPINION

Section 337 provides that, under certain conditions, a portion of foreign personal holding company income (called supplement P net income) is taxed to parties that the statute calls "United States shareholders." The statute states that the persons to be called "United States shareholders" are "citizens or residents of the United States, domestic corporations, domestic partnerships," and some estates or trusts, "who are shareholders in such foreign personal holding company."

Section 331 defines the term "foreign personal holding company" as meaning any foreign corporation if certain gross income and stock ownership requirements are met. Section 331(a)(1) requires that 60 percent of the gross income of the foreign corporation be foreign personal holding company income as defined by section 332. It is conceded this requisite exists here. The issue is as to the existence of the second requisite or the stock ownership requirement of section 331 (a)(2), as implemented by the constructive ownership provisions of section 333. These provide in pertinent part as follows:

SEC. 331. DEFINITION OF FOREIGN PERSONAL HOLDING COMPANY.

(a) GENERAL RULE.—For the purposes of this chapter the term "foreign personal holding company" means any foreign corporation if—

\*        \*        \*        \*        \*        \*        \*

(2) STOCK OWNERSHIP REQUIREMENT.—At any time during the taxable year more than 50 per centum in value of its outstanding stock is owned, directly or indirectly, by or for not more than five individuals who are citizens or residents of the United States, hereinafter called "United States group".

SEC. 333. STOCK OWNERSHIP.

(a) CONSTRUCTIVE OWNERSHIP.—For the purpose of determining whether a foreign corporation is a foreign personal holding company, insofar as such determination is based on stock ownership under section 331(a)(2), section 332(e), or section 332(f)—

\*        \*        \*        \*        \*        \*        \*

(2) FAMILY AND PARTNERSHIP OWNERSHIP.—An individual shall be considered as owning the stock owned, directly or indirectly, by or for his family or by or for his partner. For the purposes of this paragraph the family of an individual includes only his brothers and sisters (whether by the whole or half blood), spouse, ancestors, and lineal descendants.

(3) OPTIONS.—If any person has an option to acquire stock such stock shall be considered as owned by such person. For the purposes of this paragraph an option to acquire such an option, and each one of a series of such options, shall be considered as an option to acquire such stock.

(4) APPLICATION OF FAMILY-PARTNERSHIP AND OPTION RULES.—Paragraphs (2) and (3) shall be applied—

(A) For the purposes of the stock ownership requirement provided in section 331(a)(2), if, but only if, the effect is to make the corporation a foreign personal holding company;

\* \* \* \* \* \* \*

(b) Convertible Securities.—Outstanding securities convertible into stock (whether or not convertible during the taxable year) shall be considered as outstanding stock—

    (1) For the purpose of the stock ownership requirement provided in section 331(a)(2), but only if the effect of the inclusion of all such securities is to make the corporation a foreign personal holding company;

Respondent first questions the status of the bearer warrants as stock. It is obvious that if only the registered shares are to be considered, fewer than five U.S. citizens or residents owned well over 50 percent and the stock ownership requirement of section 331(a)(2) would be met. Respondent frankly admits on brief that "An examination of the conditions printed on the reverse side of the warrants discloses many aspects of the warrants which are similar to the characteristics of common stock. See, for example, conditions \* \* \* entitling the warrant holder to dividends, and to vote at shareholders' meetings under certain conditions." However, he argues that in other respects the warrants were more like "options" mentioned in section 333(a)(3) or "convertible securities" mentioned in section 333(b). If the bearer warrants could be said to be options or convertible securities they would be disregarded in determining stock ownership, for under section 333(a)(4) and 333(b)(1) options and convertible securities are to be considered outstanding stock "if, but only if" the effect is to make the corporation a foreign personal holding company.

We hold the warrants are shares of stock in the foreign corporation and are to be treated as such in determining whether the corporation is a foreign personal holding company within the statutory requirement as to stock ownership. The warrants were stock in bearer form and essentially equivalent to the registered stock. The warrant owner was entitled to dividends and the right to vote at shareholders meetings—two very fundamental rights of a stockholder. The warrant owner had all of the rights of a registered shareholder even if he had to comply with some purely formal conditions to exercise those rights. It is significant that respondent treated the warrants as stock in his determinations of deficiencies in these cases. The determined shares of undistributed supplement P net income bear the same ratio to the corporation's total undistributed supplement P net income as the amount of stock owned by Nettie S. Miller and Elsie I. Sweeney bears to all of the corporation's outstanding securities including both the 15,120 registered shares and the 19,800 bearer warrants.

Respondent construes section 331(a)(2) as implemented by section 333(a)(2) as meaning the controlling "United States group" men-

tioned in section 331(a)(2), of five or less U.S. citizens or residents who own a majority of the stock of the foreign corporation, need not actually own any shares of stock at all. It is sufficient under respondent's interpretation if the five or less U.S. residents or citizens are related within the specified degree to the actual shareholders who own 50 percent of the stock and are not residents or citizens of the United States.

It is respondent's contention that if the warrants are to be considered as stock and owned as stipulated by Cyrus S. Eaton's sisters, then Cyrus S. Eaton, an American citizen and resident, will be considered as owning their stock under the family constructive ownership rule of section 333(a)(2). In other words, Cyrus S. Eaton, who admittedly owns no shares of stock, would, for the purpose of determining the stock ownership requirement of a foreign personal holding company, be considered as owning over 50 percent or 19,800 shares out of 34,920 shares outstanding. This would mean Cyrus Eaton would alone constitute a U.S. group of five or fewer individuals who own 50 percent of the stock of the foreign corporation.

Neither Eaton nor his sisters will suffer any tax consequences by the application of the constructive ownership rule under respondent's interpretation of the statutes. The tax is imposed upon the actual shareholders who are citizens or residents of the United States. Sec. 337. Eaton, who was a resident and citizen of the United States, was not a shareholder and his sisters, who were shareholders, were not citizens or residents of the United States. The only effect will be to subject other minority stockholders such as Nettie S. Miller and Elsie I. Sweeney here, who were residents and citizens of the United States, to the tax on their proportionate shares of the corporation's undistributed supplement P net income.

The general purpose of the foreign personal holding company act is to prevent tax evasion by the device of setting up a foreign corporation controlled by a few U.S. individuals to hold income-producing property and permit the income to accumulate and thus avoid taxable dividend distributions.

In the report of the Ways and Means Committee (H. Rept. No. 1546, 75th Cong., 1st Sess.) it is stated that the foreign personal holding company act is necessary to plug up the loophole left after the enactment of the domestic personal holding company act.

Section 501 *et seq.* impose surtaxes on the undistributed profits of a corporation with the requisite percent of personal holding company income if more than 50 percent of the stock was owned by not more than five individuals. As pointed out in the above report the lack of jurisdiction over a personal holding company that was a foreign corporation prevented any direct tax on the corporation and therefore a new method of taxation against the U.S. shareholders of such foreign

personal holding company had to be devised. The above-cited report with respect to the foreign personal holding company indicates quite clearly that the legislation was directed at foreign corporations that were actually controlled by U.S. individuals. The tax was to be against the U.S. individuals who were within the jurisdiction of our taxing laws.

The report states that under the act:

> The undistributed supplement P net income of a foreign personal holding company is taxed to its United States shareholders under section 337. It is believed that in the ordinary case the stock of a foreign personal holding company is owned by the American individual (including the members of his family) for whom the corporation was created as a foreign "incorporated pocketbook."

In *Alvord* v. *Commissioner*, 277 F. 2d 713, reversing 32 T.C. 1, there is a review of the history and background that led to the enactment of the foreign personal holding company act. The history starts with the President's message assailing the foreign personal holding company as a tax-evasion device. This was followed by Congress creating a Joint Committee on Tax Evasion and Avoidance and hearings before this and the House Ways and Means Committee and their recommendations which prompted the enactment of the statute. After reviewing this history the court in *Alvord* v. *Commissioner*, *supra*, had this to say with respect to the meaning and purpose of the act:

> The scheme of § 337, appropriate to the purpose, is that, whether the holding company pays out its current earnings in dividends, the United States shareholder is taxed as if it had. The effect of the statute, of course, is to force the controlling United States shareholders to procure annual distributions of all of the Supplement P net income of the holding company.
>
> Indeed, achievement of this effect, annual distributions in dividends of holding company net income, was the immediate purpose of the statute. Failure to make such distributions was the evil at which it was directed. * * *

In the above-cited case it was admitted the foreign corporation was a foreign personal holding company and it had undistributed supplement P net income but its attempt to distribute had been prevented by the Internal Revenue Service then in control of its financial affairs. The court refused to apply the statute literally saying that "In the light of the purpose of the statute, [and] the evil at which it was directed" the "undistributed Supplement P net income," meant "undistributed because of inaction of the 'United States group.'"

We think there must actually be controlling U.S. shareholders of the foreign corporation before the foreign personal holding company statutes can have any effect. The whole object of the statute was to bring pressure to bear on the controlling U.S. stockholders to distribute earnings. The pressure takes the form of what amounts to a constructive distribution of earnings.

In *Alvord* v. *Commissioner*, *supra*, the court pointed out:

The compulsive force of the tax on the shareholders is exerted when its pressures can be expected to induce action in compliance with the statute's objective, but other shareholders are not subjected to pressures to do what they cannot command.

No pressure to distribute results when those who control would not be subject to the tax. Sections 331 and 333 must be interpreted and applied in a way that will serve the statutory purpose. *Alvord* v. *Commissioner*, *supra; Marsman* v. *Commissioner*, 205 F. 2d 335, reversing in part 18 T.C. 1.

We construe section 331(a)'(2) as meaning that if there are five or less U.S. shareholders who together own over 50 percent of the stock of the foreign corporation, then it is a foreign personal holding company and they form the U.S. group. If there are six or more U.S. shareholders who together own over 50 percent of the stock of the foreign corporation, then the foreign corporation is not a foreign personal holding company, unless by applying section 333(a)(2) the ownership of family-held stock is attributed to one family member and the effect is to have no more than five shareholders.

It is obvious that to implement the purpose for which the statute was enacted it was necessary to have a constructive stock ownership provision to be used in determining whether the requisite control existed in five or fewer U.S. individuals. Otherwise a U.S. shareholder could split his holdings amongst members of his family and increase the shareholders to more than five U.S. individuals while retaining effective control by reason of the family relationship. Certainly the principal object sought to be accomplished by the family ownership portion of the constructive stock ownership provision must have been to prevent evasion by family transfers, though obviously it would apply whenever members of a family owned shares of stock. Where there is U.S. control, then section 333(a)(2) allows concentration of ownership of all family-owned shares in one U.S. shareholder for the purpose of determining whether there be five or fewer U.S. shareholders owning over 50 percent of the outstanding stock.

This gives the constructive ownership statute a reasonable interpretation that will circumvent an obvious maneuver a U.S. shareholder could make to cause the foreign corporation to escape the definition of a foreign personal holding company.[2] To hold otherwise distorts

---

[2] In 7 Mertens, Law of Federal Income Taxation, secs. 40.08, 40.09, pp. 28–30, the comment is made that the personal holding company acts for many years have contained a provision in connection with the stock ownership prerequisite to taxation usually referred to as the "constructive stock ownership rules" which it is stated "has remained unchanged since it was first enacted in 1937" except for an amendment not here material in 1954. The text goes on to state: "The effect of the constructive stock ownership rule has been to attribute to a stockholder the ownership of shares of others under the circumstances referred to in the various revenue acts."

the meaning of the definition statute it was designed to implement and leads to absurd results.

If one construes section 331(a)(2), after applying the constructive ownership rule of section 333, as meaning that an individual could be a member of the U.S. group without being a shareholder of the foreign corporation, then the natural extension of this interpretation is that no member of the U.S. group need be a shareholder of the foreign corporation. This means Congress has defined a "foreign personal holding company" as meaning a foreign corporation that might not have any shareholders who were residents or citizens of the United States. In the instant case, under respondent's interpretation of the statutes, the corporation would be a foreign personal holding company if Eaton's sisters were its only shareholders. Of course, in such a case no one would be taxed. However, it illuminates the shortcomings of such an interpretation to show that it means Congress first provided a tax upon U.S. shareholders of foreign personal holding companies and then defined a foreign personal holding company as a foreign corporation that might not include any U.S. shareholders at all.

Respondent's interpretation can, as in the instant case, cause the U.S. stockholders to be subject to the tax because the corporation will not distribute, when they do not control the corporation, and they are not related to the foreign controlling stockholders nor their U.S. relative. It is unreasonable and absurd to try to force corporate action without being able to bring pressure on those who control the corporation's actions. *Alvord* v. *Commissioner, supra.* When there is an interpretation that accords with the purpose of the act then the statute should not be interpreted to produce absurd consequences even though such an interpretation might be within the literal language of the act. *United States* v. *Amer. Trucking Ass'ns,* 310 U.S. 534. This rule of statutory construction has been applied directly to the foreign personal holding company statute. *Alvord* v. *Commissioner, supra; Marsman* v. *Commissioner, supra.* In the last cited case the court held that only that portion of the foreign personal holding company income earned by the company after the taxpayer became a U.S. resident was taxable, the opinion stating: "We do not think * * * that the statute should be applied literally and without reference to the purpose for which it was admittedly enacted."

In the light of the purpose and scheme of the foreign personal holding company legislation we think Congress was only legislating with respect to foreign corporations that were controlled by U.S. stockholders. In section 331(a)(2) it limited those domestically controlled foreign corporations to the ones that had five or less American stockholders.

We construe section 331 as defining a foreign personal holding company as a foreign corporation with the requisite undistributed income that is controlled by a U.S. group made up of five or fewer U.S. citizens or residents and if the group of U.S. individuals that control is more than five, then section 333(a)(2) is applicable to treat family-owned shares as one unit if the result is to reduce the group to five.

There were other adjustments that were agreed to.

Reviewed by the Court.

*Decisions will be entered under Rule 50.*

———

FAY, *J.*, concurring: I believe that the result reached by the Court in the instant case is correct. I concur with the view implicit in the majority opinion that the family attribution rules of section 333(a)(2) operate solely with respect to shareholders. This alone is sufficient for the issue to be decided against the respondent. The committee reports relating to the original enactment of the foreign personal holding company act in 1937 clearly show that the word "individual" was used in section 333(a)(2) to bring within the scope of the act the situation wherein a shareholder transfers all his stock to his relatives to avoid the effect of the act.[1] It must be borne in mind that section 333(a)(2) was drafted in the primordial days of tax sophistication. At that time, Congress could not be certain that the courts, if the word "shareholder" were used, would look beyond the transfer to find the transferor the real shareholder. It was never intended that the section apply to individuals lacking any real economic interest in the holding company.

I disagree, however, with the majority's conclusion that section 333(a)(2) be limited strictly to concentrating stock ownership among related U.S. shareholders in order that five or less be found to have the requisite control. If Congress had intended that section 333(a) be so restricted, the section would have read, as follows:

SEC. 333. STOCK OWNERSHIP.

  (a) CONSTRUCTIVE OWNERSHIP.— * * *

  *       *       *       *       *       *       *

  (2) FAMILY AND PARTNERSHIP OWNERSHIP.—An individual shall be considered as owning the stock owned, directly or indirectly, by or for his family [who are citizens or residents of the United States] or by or for his partner [who is a citizen or resident of the United States]. * * *

———

[1] "The provisions discussed below establish methods of bringing into the ownership of an individual stock actually or constructively owned by others. As under title IA of the present law, it is not necessary that the individual who may be counted to make five individuals, under the constructive ownership rules, actually own stock himself. To exclude the case where he owned no stock would permit avoidance by the employment of the device of placing the stock in others whose actions would be subject to the individual's control because of the family or other relationship existing between him and the actual owner." (H. Rept. No. 1546, 75th Cong., 1st Sess., p. 7 (1937), 1937-2 C.B. 614.)

However, the bracketed clauses were not included in the above section. Nor is there any indication of congressional intent which would justify reading those clauses into the section. In a situation where (1) five or less U.S. shareholders own 50 percent or less of the value of the stock in a foreign (personal) holding company and (2) foreign relatives of one or more U.S. shareholders also own stock in the same company, it is wholly consonant with the purpose of the act that the family attribution rules of section 333(a)(2) apply to U.S. shareholders to establish "control" for purposes of section 331(a)(2). There is no reason to assume that shares held by foreign relatives are less susceptible of being controlled by U.S. shareholders than shares held by U.S. relatives.

DAWSON and HOYT, *JJ.*, agree with this concurring opinion.

---

HOYT, *J.*, concurring: While I agree with much that is stated in the Court's opinion and with the result reached by the majority, I think their construction of section 333(a)(2) is unduly narrow. Reading sections 331(a)(2), 333(a)(2), and 333(a)(4) together, I would attribute ownership of family-held stock to one family member, not only in the event that the group of U.S. individuals that controls consists of more than five and the result would be to reduce the group to five, but also to determine whether or not five or fewer resident or citizen stockholders together own, directly or indirectly, 50 per centum in value of the foreign corporation's outstanding stock. I believe that if the resident-citizen brother here were himself a stockholder he would be an individual comprising a "United States group" of fewer than five stockholders owning more than 50 per centum of the foreign corporation's stock. This is so because under section 333(a)(2) "For the purpose of determining whether a foreign corporation is a foreign personal holding company, *insofar as such determination is based on stock ownership under section 331(a)(2)*" (emphasis supplied), he should be considered as owning the stock owned directly or indirectly by his sisters even though they are nonresidents.

In other words, to paraphrase the concluding paragraph of the Court's opinion, I would instead conclude as follows:

We construe section 331 as defining a foreign personal holding company as a foreign corporation with the requisite undistributed income that is controlled by a U.S. group made up of five or fewer U.S. citizens or residents. If the group of U.S. individuals that controls is more than five, then section 333(a)(2) is applicable to treat family-owned shares as one unit so as to reduce the group to five. Section 333(a)(2) is also applicable to determine whether or not there is *control* in a "United States group" of five or fewer individuals owning stock, directly or indirectly, in a foreign corporation.

Any application of section 333 (a) (2) is, of course, specifically limited by section 333 (a) (4) to a result which has the effect of making the foreign corporation a foreign personal holding company.

BRUCE, TRAIN, and FAY, *JJ*., agree with this concurring opinion.

---

WITHEY, *J.*, dissenting: I dissent from the majority opinion herein largely because of the conclusion reached. To me, the conclusion places the crucial burden of proof upon the Commissioner whereas it should, under the law, rest upon the petitioners. The majority opinion, in effect, reasons that in order for the attribution provisions of section 333 and the definition section, section 331, to apply to the facts in this case, there must have been in existence the evil sought to be obviated by Congress in enacting these sections. The majority opinion comes to the conclusion that that evil, i.e., that Cyrus Eaton actually controlled the stock held by his Canadian sisters, is not shown and therefore the conclusion is reached that the statutes do not apply, the Canadian sisters' stock is not attributable to Cyrus Eaton, and therefore control of the Canadian corporation cannot under the statute be said to be within the "United States group." As I read this reasoning, it establishes the proposition, which I think is true, that these sections set up a presumption to the effect that, when certain degrees of consanguinity exist between an American citizen whether or not he holds any stock in a foreign corporation and foreign stockholders of that foreign corporation, it is presumed, for the purpose of determining the number of the U.S. group of stockholders, that group under the intendment of the statute has actual control of the foreign corporation. To me, unless this presumption is a rebuttable one, it would be in some instances in violation of the due process clause of the United States Constitution. It is incumbent upon the judiciary to construe statutes as constitutional if possible. I therefore conclude, as the majority seems to do, that the question of actual control by the "United States group" is always open to proof, and it seems settled and fundamental that a taxpayer taking the position that for lack of such control these statutes do not apply in his case has the burden of showing such actual lack of control. The majority in this case has placed that burden, however, upon the Commissioner by concluding that because the record does not support a finding of lack or existence of such control, decision must be entered *for the taxpayers*. As I have said above, at the opening of the hearing of this case under these sections the presumption is, due to the relationship of Eaton and his two Canadian sisters, that such control did exist in the Eaton group. It must always be open to proof whether regardless of such relationship with his Canadian sisters Eaton did or did not actually control the stock held by them, and that burden is the burden of the taxpayers

in this case rather than the burden of the Commissioner. Decision should be entered here for the respondent because of the failure of proof on the part of the taxpayers.

———

SCOTT, J., dissenting: I agree with the majority that the warrants constitute stock of Investors Trust Ltd., but disagree with the conclusion that under the provisions of sections 331(a)(2) and 333(a)(2) of the Internal Revenue Code of 1939, Investors Trust Ltd. was not a foreign personal holding company. The language of section 333(a) (2) is precise. It states that for the purpose of determining whether a foreign corporation is a foreign personal holding company under section 331(a)(2), an individual shall be considered as owning the stock owned by his sisters. In this case it is stipulated that Eaton is an American citizen and that his two sisters owned the bearer warrants. When considered to be stock, these warrants constitute over 50 percent of the stock of Investors Trust Ltd. Therefore, the language of the statute, literally construed, states that Eaton is considered, for the purposes of section 331(a)(2), as owning over 50 percent of the stock of Investors Trust Ltd. In my opinion we should construe this statute to mean exactly what its language says unless the congressional intent is otherwise. In my opinion the congressional intent in the enactment of this statute was that it be given a literal construction.

The committee reports with respect to the original enactment of the foreign personal holding company act in 1937 specify that it is not necessary that an individual actually own any stock in order to be counted in the five individuals who constitute the company's stock ownership. The Senate committee report (S. Rept. No. 1242, 75th Cong., 1st Sess., p. 22 (1937), 1937–2 C.B. 609) with respect to this bill (with exceptions not here pertinent) stated that the Senate committee agreed with the bill as proposed by the Ways and Means Committee of the House of Representatives, and quoted the House report in full. In the House report (H. Rept. No. 1546, 75th Cong., 1st Sess., 1937–2 C.B. 620), the following appears under "New Section 333—Stock Ownership in a Foreign Personal Holding Company":

Section 333 sets forth the provisions governing the determination of stock ownership for the purposes of ascertaining whether a foreign personal holding company's stock is owned by a United States group, and whether amounts receivable from personal service contracts or for the use of corporation property are includible as foreign personal holding company income. *These provisions are the same as those provided in the case of personal holding companies subject to Title IA.* See discussion "New Section 354." [1] [Emphasis supplied.]

———

[1] "New Section 354" was an amendment to the provisions of the personal holding companies act respecting domestic personal holding companies which became sec. 503, I.R.C. 1939. The provisions of sec. 503, I.R.C. 1939, are identical with the provisions of sec. 333, I.R.C. 1939.

The discussion in this same report under "New Section 354, 1936 Act—Stock Ownership" (1937-2 C.B. 614), includes the following:

The provisions discussed below establish methods of bringing into the ownership of an individual stock actually or constructively owned by others. As under Title IA of the present law, it is not necessary that the individual who may be counted to make five individuals, under the constructive ownership rules, actually own stock himself. To exclude the case where he owned no stock would permit avoidance by the employment of the device of placing the stock in others whose actions would be subject to the individual's control because of the family or other relationship existing between him and the actual owner.

In my opinion the majority in this case is reading out of the statute a provision against avoidance which Congress specifically placed in the statute. I do not agree with the majority that to apply the statute as written and as Congress intended it should be applied as shown by the committee reports, reaches an absurd result.

Even though all of the facts in the instant case were submitted by stipulation, the burden of proof is still upon petitioners and they have not shown that Eaton did not transfer the bearer warrants to his sisters for the specific purpose of tax avoidance for himself and the minority stockholders. The only intimation in the record in this regard is a letter written to the representatives of the two petitioners at the time their stock was purchased with Eaton acting as broker. In that letter Eaton stated with respect to Investors Trust Ltd., "My children and I will have a very substantial investment in the company. I plan to give it my personal attention."

The very nature of the warrants which carry the presumption of ownership in the bearer facilitates "avoidance by the employment of the device of placing the stock in others whose actions would be subject to the individual's control." The majority opinion recognizes that "It is obvious that to implement the purpose for which the statute was enacted it was necessary to have a constructive stock ownership provision" for otherwise "a United States shareholder could split his holdings amongst members of his family and increase the shareholders to more than five United States individuals while retaining effective control by reason of the family relationship." In my opinion it is likewise necessary that the constructive stock ownership provisions prohibit a U.S. citizen from transferring his entire holdings to members of his family who are citizens and residents of a foreign country while retaining effective control by reason of the family relationship, thus permitting income to accumulate for the family benefit without being subject to U.S. tax and avoiding tax for those selected U.S. stockholders whose participation in his controlled foreign corporation is mutually agreeable. The importance to the controlling U.S. citizen of having other citizens or residents of the United States participate as stockholders in his controlled foreign corporation might

well of itself be a coercive influence to have dividends distributed to them if they are to be subject to U.S. tax under the foreign personal holding company act absent such distribution.

I would not interpret *Alvord* v. *Commissioner*, 277 F. 2d 713 (C.A. 4, 1960), reversing 32 T.C. 1, relied on by the majority, as supporting the conclusion that the "compulsive force of the tax" is not to be exerted on minority shareholders because they "cannot command" the declaration of a dividend. As I interpret that opinion, it was the fact that the Government, which was attempting to exact the tax, prohibited the distribution of a dividend with which to pay the tax which persuaded the Court of Appeals to conclude that the statute did not there apply. A lack of ability to "command" because of Government prohibition of the action, creates a very different situation from that of the minority stockholder who acquires his stock knowing that the majority stockholder or stockholders will be able to control the corporation.

Certainly, as the majority points out, there is some inequity in taxing a minority shareholder who is not in control of the corporation and thereby able to force a declaration of a dividend. In my opinion this inequity exists no more in a case like the present, where all of the stock of an American citizen is held by him constructively because of being actually owned by his foreign relatives, than in the situation where the majority of such stock is held actually by an American citizen who might for reasons of benefit only to him, such as a loss during a particular year from other business endeavors, prefer to leave the corporate income in the foreign corporation even though he is required to include in his taxable income his proportion of the undistributed foreign personal holding company supplement P net income.

That it was the intent of the statute to require that minority shareholders who were not in control of the corporation include in their taxable income their proportionate share of such foreign personal holding company net income is likewise made specifically clear in the committee reports (1937-2 C.B. 624) :

> In its application, section 337 reaches all United States shareholders who own stock in the foreign personal holding company on the specified day. The section may, therefore, reach individuals having only a minority interest in the foreign company. However, that is not considered very likely to happen. In the ordinary course of events, strangers do not hold stock in a family owned "incorporated pocketbook," whether incorporated under foreign or domestic law. Moreover, the definition placed upon the term "foreign personal holding company" should exclude foreign corporations whose securities are listed on any exchange so that Americans generally might purchase such securities as investments. If any individual is a minority shareholder of a foreign personal holding company, it is more than likely that such individual is a member of, or is in some way connected with, the family owning and controlling the foreign

company. If by chance an individual should be a minority shareholder in a foreign corporation under such circumstances that he would not be aware of the company's classification as a foreign personal holding company, he would not be subjected to any penalties for failing to comply with section 337. At most, his failure would stay the tolling of the statutory period of limitations upon assessment and collection for a period of seven years and he`would, within such period, be subjected to a deficiency assessment when the fact became known.

The present record does not show that the two petitioners in this case were not aware of the complete situation with respect to Investors Trust Ltd., including the fact that under the strict application of the provisions of the foreign personal holding company act they might be taxable on their proportionate share of the undistributed supplement P net income of that corporation. Even if such a lack of knowledge were to be assumed without proof, the committee report shows that the intent of Congress was that shareholders come within the provisions of the statute.

In my opinion it is totally unjustified, under the facts of this case, to read out of the statute not only the ordinary meaning of the words used therein, but the intent of the statute as shown in the committee reports accompanying the act. To construe the statute as the majority in this case does, provides a pattern which those individuals so fortunate as to have close foreign relatives may follow to avoid the application of the foreign personal holding company statute to U.S. citizens selected to be minority shareholders.

The evil at which the foreign personal holding company act was directed was the accumulation of income by U.S. citizens or residents through investment in foreign holding companies, the investment income of which would not be subject to U.S. tax. The statute was not directed only to the shareholder or shareholders who actually owned a majority of the stock, but to each U.S. shareholder, so long as five or less U.S. shareholders were the "controlling" shareholders within the definition of sections 331(a)(2) and 333(a)(2). Under these sections "actual ownership" is not necessary for "control." The statute was intended to force the "controlling" shareholders as defined therein to have annual distributions made so that each U.S. shareholder, and not just those shareholders who owned a majority of the stock, would be subject to tax.

I would hold Investors Trust Ltd. to be a foreign personal holding company.

ATKINS, *J.*, agrees with this dissent.